**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 2, 2025**

# In the Court of Appeals of Georgia

A25A0060. IN RE: ESTATE OF ROSA D. MARTIN, deceased.

DOYLE, Presiding Judge.

In this probate case, Darlene Martin's sibling filed a Petition for Emergency Removal, Accounting, and Judgment ("2023 Petition") seeking to remove her as the executor of their mother's estate. Martin moved to dismiss the 2023 Petition on several grounds, including want of prosecution pursuant to the five-year rule in OCGA § 9-2-60 (b).[1] The probate court denied the motion to dismiss, and this Court granted Martin's interlocutory appeal to determine whether the 2023 Petition should be dismissed pursuant to OCGA § 9-2-60 (b). The probate court correctly held that

---

[1] The parties also relied on OCGA § 9-11-41 (e) which contains an identical rule.

there was no "pending matter" subject to the five-year rule and that OCGA § 9-2-60 (b) does not operate to dismiss the present 2023 Petition. Therefore, we affirm.

The material record is not disputed, and it reflects that Martin, together with her siblings, filed a petition to probate their mother's will on February 26, 2014 ("2014 Petition"). That same day, the probate court admitted the will and allowed Martin and her siblings to serve as co-executors of their mother's estate. Weeks later the probate court issued letters testamentary, finalizing the proceeding. In early 2017, two of the three executors renounced their positions, and on March 20, 2017, the probate court granted Martin's petition to act as sole executor.

On June 6, 2023, Martin's sibling filed the 2023 Petition seeking her removal and an accounting. He filed the petition, in part, pursuant to OCGA § 53-7-54 (a), which provides that "[i]f a personal representative or temporary administrator commits a breach of fiduciary duty or threatens to commit a breach of fiduciary duty, a beneficiary of a testate estate . . . shall have a cause of action [to seek certain relief including appointing another personal representative]." He also invoked OCGA § 53-7-55 (a), which authorizes "any person having an interest in the estate" to file a

petition seeking to revoke a personal representative's letters. Thus, as provided by those statutes, the 2023 Petition was an original action seeking new relief.[2]

Martin opposed the 2023 Petition, and the parties engaged in a myriad of other litigation activities until Martin asked the probate court to dismiss the action on substantive grounds[3] as well as for want of prosecution under OCGA § 9-2-60 (b).[4] The probate court denied Martin's motion on each of the grounds asserted, including that OCGA § 9-2-60 did not operate to dismiss the 2023 Petition.

Thereafter, the probate court certified its ruling for immediate review, and this Court granted Martin's application for interlocutory appeal.

---

[2] See generally *Rader v. Levenson*, 290 Ga. App. 227, 229 (1) (b) (659 SE2d 655) (2008) ("This provision permits heirs of the estate to file suit against a personal representative or administrator of the estate."). Although a certificate of service was attached to the 2023 Petition, a note indicated that service on Martin was required "by process server or sheriff." The probate court appointed a special process server, and Martin was personally served.

[3] Martin asserted that the 2023 Petition violated the decedent's testamentary intent and that certain other co-executors' prior renunciation acted as a waiver.

[4] That Code section provides: "Any action or other proceeding filed in any of the courts of this state in which no written order is taken for a period of five years shall automatically stand dismissed with costs to be taxed against the party plaintiff."

1. Martin now contends the probate court erred when it denied her motion to dismiss for want of prosecution under OCGA § 9-2-60 (b). We review this question de novo,[5] and we disagree.

Specifically, Martin argues that the 2023 Petition should be dismissed because there were no orders issued with respect to the estate in the preceding five years. This misapprehends the record in this case and how OCGA § 9-2-60 (b) operates. As a general matter, the probate code allows for the filing of a variety of petitions arising out of the probating of a will.[6] Initially, a petitioner may file a petition to admit a will to probate in solemn form and have someone named as an executor. This happened here in 2014 (admitting the will and issuing letters testamentary), and in 2017 (renunciations and new letters testamentary). After the 2014 order issued, the 2014 Petition's relief was granted, and as the probate court ruled, it was "not a pending matter" — the case was final.[7] Thereafter, when the 2023 Petition was filed and

---

[5] See *Mancuso v. Jackson*, 359 Ga. App. 428 (858 SE2d 244) (2021).

[6] OCGA §§ 53-5-17, 53-5-21, 53-7-50, 53-7-54.

[7] See *In re Estate of Bagley*, 239 Ga. App. 877, 878 (522 SE2d 281) (1999). See also *McConnell v. Moore*, 232 Ga. App. 700, 702-703 (503 SE2d 593) (1998) (holding that an order admitting a will to probate and appointing an executor was a final order), citing *Dismer v. Luke*, 228 Ga. App. 638, 638-639 (1) (492 SE2d 562) (1997) (holding

4

service was perfected on Martin, a new case was initiated and should have proceeded accordingly. The probate court properly denied the motion to dismiss the 2023 Petition, which should end this Court's analysis.

Nevertheless, based on this appeal's procedural posture, the dissent focuses on whether OCGA § 9-2-60 (b) applies to administratively dissolve the 2014 Petition — which it believes results in the dismissal of the 2023 Petition[8] — because there were no orders issued in the 2014 case in the five years preceding the filing of the 2023 Petition.

The purpose of OCGA § 9-2-60 is to "remove from trial courts those cases whose continued pendency only clutter[s] the dockets [and], generally, the great number of cases which, to all intents and purposes had been abandoned by both

---

that an order admitting a will to probate and issuing letters testamentary was a final order).

[8] Again, the 2023 Petition is a viable petition initiating a new action, and it should not be dismissed due to the fact of filing it with an old case number as opposed to a new one.

parties, and in many instances had been settled without clearing the docket."[9] As

stated by the Supreme Court of Georgia,

> the automatic dismissal statute is a reasonable procedural rule. It is reasonable in part, because it furthers the dual purpose of preventing court records from becoming cluttered by *unresolved* and inactive litigation and [of] protecting litigants from dilatory counsel."[10]

But this Court has consistently held that the five-year rule does not apply to cases that

have been resolved.[11] Thus, here, where the probate court entered orders affording the

---

[9] (Citation and punctuation omitted.) *Zepp v. Brannen*, 283 Ga. 395, 396 (658 SE2d 567) (2008), citing *Lewis v. Price*, 104 Ga. App. 473, 476 (2) (122 SE2d 129) (1961). See also *Freeman v. Ehlers*, 108 Ga. App. 640 (134 SE2d 530) (1963) ("[The five year rule's] purpose is to prevent the cluttering of court records with unresolved and inactive litigation.").

[10] (Punctuation omitted; emphasis supplied.) *Ga. Dept. of Med. Assistance v. Columbia Convalescent Center*, 265 Ga. 638, 640 (1) (458 SE2d 635) (1995). See also *Brown v. Kroger Co.*, 278 Ga. 65, 68 (597 SE2d 382) (2004); *Lewis*, 104 Ga. App. at 476 (2).

[11] See, e.g., *Woodehaven Townehomes, Inc. v. Ferdinand,* 296 Ga. App. 325, 326 (1), n. 3 (674 SE2d 384) (2009) ("The five-year rule applies to cases awaiting disposition, not to cases already adjudicated by verdict or judgment.") (punctuation omitted), quoting *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 55 (2) (b) (572 SE2d 664) (2002). See also *Jefferson v. Ross*, 250 Ga. 817, 819 (301 SE2d 268) (1983) (holding that following a jury trial and verdict, a trial court has inherent authority to enter "judgment reflecting what has already been accomplished," even after "the passage of five years without entry of an order").

various petitioners the relief they sought (admitting the will and issuing letters testamentary) without any appeal taken from those orders, the 2014 Petition became final, and there was nothing pertaining to the 2023 Petition that warranted dismissal under OCGA § 9-2-60 (b).[12]

The probate court recognized this, and in effect, held that OCGA § 9-2-60 (b) did not operate to "dismiss" the 2014 case or otherwise affect the pendency of the 2023 Petition. Nothing about the ensuing five years operated to prevent the petitioner from seeking to remove Martin by filing the 2023 Petition. This is because — even under the dissent's outcome resulting in the administrative closure of the 2014 Petition and subsequent dismissal of the 2023 Petition — the petitioner could still file another original petition to remove Martin as the executor and demand an accounting because she has not been discharged from her responsibilities at this time.[13] Therefore,

---

[12] This is not to say that I disagree with the dissent's interpretation of OCGA § 9-2-60 (b) generally. In fact, this Court unanimously agrees that OCGA § 9-2-60 (b) administratively closes a case if no orders are entered in a case within five years of the most recent order. We also all agree that pursuant to the plain language of the statute, it applies to probate cases.

[13] See *In re Estate of Cornett*, 357 Ga. App. 310, 316 (1) (850 SE2d 790) (2020) ("Until she is properly discharged or otherwise relieved by law, an executor retains the authority of that appointment and the obligations of that fiduciary relationship with those she represents.") (punctuation omitted). The 2014 order admitting the will

7

because the 2014 Petition was final, OCGA § 9-2-60 (b) did not apply to it, and the probate court correctly ruled that the 2023 Petition was not subject to dismissal.

2. With respect to the dissent's concern regarding whether we properly apply this specific analysis in this case, the dissent's view of this record and of the judicial exercise before us is too narrow. For starters, in response to the motion to dismiss the 2023 Petition, the petitioners argued in the probate court that "any assertion that [the probate] court has lost jurisdiction over this matter pursuant to OCGA § 9-2-60 and OCGA § 9-11-41 (e) is without merit." The petitioners further pointed out to the probate court "there is no time limit for the settlement of an Estate in

stated "that the Personal Representatives shall disburse all property according to the terms of the Will and shall maintain all records of income and disbursements *until discharged by Order of this Court*." (Emphasis supplied.) Pursuant to the probate Code, a personal representative can be discharged pursuant to OCGA § 53-7-50, which provides that "[a] personal representative who has fully performed all duties or who has been allowed to resign may petition the probate court for discharge from the office and from all liability," or have her authority revoked under OCGA § 53-7-55 (a), if someone files a petition to "revoke the personal representative's letters or impose other sanctions." Thus, until the personal representative has been discharged or had their authority revoked, they continue to act pursuant to their court-ordered authority to do so, and an administrative closure of the original probate case file would have no impact on that authority. See *In re Estate of Cornett*, 357 Ga. App. at 316 (1), citing *Liner v. North*, 188 Ga. App. 677, 679 (2) (373 SE2d 846) (1988) ("As a general rule, the authority of an executor . . . continues until the estate has been completely administered, or until he dies, resigns, or is removed, or his letters revoked, or a temporary order of suspension is made.") (punctuation omitted).

8

Georgia," "there has been no discharge of the personal representative [Darlene]," and the "issues [raised in the 2023 Petition] remain for litigation before [the probate court] and are not subject to dismissal."[14]

Addressing this argument, the probate court held that the entry of the February 26, 2014 order precluded dismissal of the 2023 Petition under OCGA § 9-2-60: "This is not a pending matter that has 'no order' taken. An Order was entered, therefore, the case cannot be dismissed."[15] Even if this is inartfully worded, it remains true that the probate court explicitly held, and we agree, that after the February 26, 2014 order granting the relief sought by the original probate petition, there was nothing pending

---

[14] As noted above, the petitioners also cited to OCGA § 53-7-62, arguing the probate court had jurisdiction to entertain their request for a settlement of accounts. They closed their briefing stating the motion to dismiss based on the statute was "without merit," and the "Estate remains open for a settlement of accounts with no time limit under Georgia law through the present." This clearly raises the issue of the *applicability* of OCGA § 9-2-60 to the viability of the 2023 petition and the probate court's jurisdiction to hear it.

[15] In its entirety, the probate court's ruling on the applicability of the statute was: "[Respondent] argued the matter is dismissed by operation of law due to no order being taken on the case for five years. [Respondent] referred to OCGA § 9-2-60, [d]ismissal of action where no order taken for five years. The key words in this code section are 'no order.' The matter before this Court has an Order which was entered on February 26, 2014 to admit the Will to probate. This is not a pending matter that has 'no order' taken. An Order was entered, therefore, the case cannot be 'dismissed.'"

for further resolution, so OCGA § 9-2-60 does not afford a basis to dismiss the 2023 Petition. Given that this was the conclusion reached by the probate court after argument by the petitioners, we fail to see how this Court is precluded from reaching the same one.

Last, in the order certifying the ruling for immediate review, the probate court stated:

> The Court hereby certifies that the above [order on appeal] is of such importance to the case that immediate review should be had in the Georgia appellate courts. Specifically, an immediate appeal would assist this Court and the parties as to *whether this case remains pending or whether the same has been automatically dismissed, by operation of law under OCGA § 9-2-60 (b) and 9-11-41 (e), since no written Order was taken in the case for a period more than five years and this would potentially deprive this Court of any jurisdiction*, subject matter or personal, over this case and/or Respondent.[16]

Thus, the issues of whether OCGA § 9-2-60 applies in this case at all and whether the probate court has jurisdiction to hear the 2023 Petition are plainly before this Court.

---

[16] (Emphasis supplied.)

In sum, we affirm the probate court's denial of the motion to dismiss the 2023 Petition.[17]

*Judgment affirmed. Brown, C. J., Barnes, P. J., Dillard, P. J., Mercier, Gobeil, Pipkin, Land, Watkins, and Padgett, JJ., concur. McFadden, P. J., concurs fully and specially. Hodges, Markle, and Davis, JJ., dissent. Rickman, P. J., dissents without opinion.*

---

[17] Upon remittitur, the probate court should mark as closed the original case addressing the 2014 Petition to probate the will and identify the 2023 Petition in a manner consistent with this opinion and applicable rules. See Uniform Probate Court Rule 5.3.11 ("Each matter shall be identified by year of filing, type of case and estate number.").

A25A0060. IN RE ESTATE OF MARTIN.

McFadden, Presiding Judge, concurring fully and specially.

I concur in the majority opinion.

"The Court of Appeals shall be a court of review and shall exercise appellate and certiorari jurisdiction in all cases not reserved to the Supreme Court or conferred on other courts by law. The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents." Ga. Const. of 1983, Art. VI, Sec. V, Par. III.

Our jurisdiction is statewide. As between the two appellate courts, we issue substantially the greater volume of case law and, by an even larger margin, the greater number of opinions.

We therefore have primary responsibility, in the mill run of cases, for assuring that the body of Georgia law is clear and correct. We have a duty to the parties to serve as "a court of review," Ga. Const. of 1983, Art. VI, Sec. V, Par. III, and a duty to the state as a whole to correctly state what the law is.

Like all courts, our authority is circumscribed by the questions presented to us. In some contexts, particularly evidentiary rulings made in the course of trial, it is circumscribed by the particular objection or argument made. In others — as here — we are called upon to correctly state a rule of law.

As a prudential matter, we should be cautious about addressing issues that the parties did not. They might have had a good reason. But here logic dictates that we must.

The question before us today, as the dissent and parties frame it, is whether the rule which is set out in both OCGA § 9-2-60 (b) and OCGA § 9-11-41 (e) — that an action in which no order is taken for five years "shall automatically stand dismissed"

— applies to cases in which a probate court has appointed an executor and no further litigation has ensued for five years.

An action in which a final judgment has been entered "is no longer pending." OCGA § 5-6-34 (a) (1) (B). Per force, an action that is not pending cannot be dismissed. It follows that we cannot determine whether an action is due to be dismissed without determining whether a final judgment has already been entered.

The dissent would have us hold that an action in which a final judgment has been entered more than five years earlier is subject to dismissal. To do so would be to misstate the law.

A25A0060. IN RE: ESTATE OF ROSA D. MARTIN, DECEASED.


DAVIS, Judge, dissenting.

If we could substitute the majority's opinion for the parties' briefs, then this case would be easy. But that is not what we have here. While the majority opinion states that the 2023 Removal Petition was a new case and, in turn, shielded from the five-year rule, the parties argue nothing of the sort, and I do not read the trial court's order as making such a finding. In fact, contrary to the majority's view of the record, *the appellees argued that the 2014 case was still open, and not final or closed*. Specifically, in response to the motion to dismiss, the appellees argued, "*[t]his estate remains open until the personal representative of this [e]state has been discharged by this [c]ourt.*" In

making this argument, the appellees reasoned that "[t]he [o]rder of this [c]ourt entered February 26, 2014 admitting this [w]ill to [p]robate, specifically stated that a discharge [o]rder by this [c]ourt of this personal representative is required." Consequently, as plainly reflected by the appellees' arguments below and contrary to the majority's conclusion on appeal, the appellees *did not* argue that the case was final, and hence the majority takes a position inconsistent with the theory asserted below.

Nor do the appellants claim the trial court committed a clerical error, as the majority concludes. Again, this argument was not asserted by the parties below or in their appellate briefs to this Court. Yet, the majority theorizes some clerical error occurred and then remands with direction to correct the clerk's purported error. But as evidenced by the appellees' arguments below, they intentionally filed the petition in the existing case based upon their belief that the case was still open and not final.

Without reading the briefs through an advocate's lens, I struggle to reach the same conclusion as the majority. Instead, I recommend a better course: judicial restraint. No doubt, as an appellate court, we owe a fidelity to judicial restraint. See *Perry v. Emory Healthcare Svcs. Mgmt., LLC*, 374 Ga. App. 41, 47 (1) (911 SE2d 229) (2025) ("[T]he appellate courts do not rule on issues not ruled on by the trial courts[, which] preserves the appellate courts' jurisdiction and delineates the proper roles of

5

the courts at the trial and appellate levels."); *In re Declaration of Judicial Emergency*, 358 Ga. App. 48, 53 (1) (853 SE2d 366) (2020) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection . . . which were not raised and determined in the trial court.") (citation omitted). After all, we "*decide . . . appeal[s] the parties bring us, rather than the appeal we might have brought were we in counsel's shoes[.]*" (Citation omitted; emphasis supplied.) *McDaniel v. State*, 367 Ga. App. 376, 380 (f) (885 SE2d 245) (2023).

For my part, I would hold that the trial court erred when it issued an order reinstating the proceeding after a five-year period of inaction. Under OCGA § 9-2-60 (b),

> [a]ny action or other proceeding filed *in any of the courts of this state* in which no written order is taken for a period of five years *shall automatically stand dismissed. . . .*

(Emphasis supplied.) The statute, in turn, applies to all Georgia courts and dismissals under section (b) operate as a matter of law (i.e., without intervention from the trial court or the parties). See *Phillips v. McCroskey*, 234 Ga. App. 87, 88 (2) (506 SE2d 388) (1998) ("An automatic dismissal is one which results as a matter of law from the

occurrence of a condition specified in a statute . . . , and without any further action on the part of anybody.") (citation omitted). As such, the "'five-year rule' . . . places . . . upon the plaintiff the duty to comply with the law and to obtain a written order . . . at some time during a five-year period and to make sure the same is entered in the record." (Citation omitted.) *Salter v. Chatham Cty.*, 136 Ga. App. 914, 915 (222 SE2d 638) (1975). Otherwise, the action is automatically dismissed and any order taken after that time is null.[1] See *Dept. of Med. Assistance v. Columbia Convalescent Ctr.*, 203 Ga. App. 535, 536 (1) (417 SE2d 195) (1992).

In this case, prior to the May 13, 2024 order, the last order taken was dated March 20, 2017. So unless the trial court entered an order within the next five years, the action terminated by operation of law under OCGA § 9-2-60 (b). Since the record here reveals no order taken in that time period, the action stood automatically dismissed. As such, the trial court lacked jurisdiction to issue the May 13, 2024 order. See *Earp v. Kranats*, 184 Ga. App. 316, 317 (361 SE2d 217) (1987) ("An automatic dismissal results as a matter of law, and the court has no discretion to order it

---

[1] OCGA 9-11-41 (e) identically provides that "[a]ny action in which no written order is taken for a period of five years shall automatically stand dismissed, with costs to be taxed against the party plaintiff."

reinstated.") (citation and punctuation omitted); *Goodwyn v. Carter*, 252 Ga. App. 114, 115 (555 SE2d 474) (2001) ("Any subsequent order after the automatic dismissal of the case is null and void, because the trial court has lost jurisdiction over the case, which no longer is pending before it."). The trial court therefore erred in denying Martin's motion to dismiss for want of prosecution. The remedy here is not for this Court to order the trial court to correct an error that it did not make. Instead, the appropriate course of action would be for the appellees to file a new action against the executor, seeking an accounting.

If anything, allowing the trial court to consider the issue in the first instance is always better than doing the work for the trial court or advocating positions not argued by counsel. I cannot agree that as judges we become advocates for counsel or the parties and assert arguments on their behalf that they clearly did not contemplate — that is not our role. For these reasons, I respectfully dissent.

I am authorize to state that Judge Hodges and Judge Markle join in this dissent.